UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
CATHY SCHIULAZ,

              Plaintiff,

  -against-

ANDREW SAUL, *Commissioner of Social Security*,

              Defendant.
----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 19-CV-3364 (FB)

*Appearances*:
*For the Plaintiff*:
HOWARD D. OLINSKY
250 South Clinton Street, Suite 210
Syracuse, New York 13202

*For the Defendant*:
SEAN P. GREENE
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

    Cathy Schiulaz appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Both Schiulaz and the Commissioner move for judgment on the pleadings. For the following reasons, Schiulaz's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this memorandum and order.

1

# I

Schiulaz, who previously worked as an executive assistant, applied for DIB on July 16, 2015. She alleged disability as of January 23, 2015, based principally on systemic lupus erythematosus ("lupus")—an autoimmune disease with a variety of symptoms, including joint pain and fatigue.

After her application was denied, Schiulaz requested a hearing before an Administrative Law Judge ("ALJ"). The hearing took place on January 31, 2018. Schiulaz was represented by counsel and testified. A vocational expert also testified.

On February 15, 208, the ALJ issued a written decision finding Schiulaz not disabled. Applying the familiar five-step process, the ALJ found (1) that Schiulaz had not engaged in substantial gainful activity since her alleged onset date, and (2) that her lupus was a severe impairment. He then found, however, (3) that her disease did not meet the criteria for a listed impairment, and (4) the she could perform her past work. The ALJ's step-four finding was based on the following assessment of her residual functional capacity ("RFC"):

> The claimant has the residual functional capacity to perform sedentary work … that includes the ability to lift/carry ten pounds occasionally and five pounds frequently, sit six hours with frequent standing and stretching and stand/walk two hours, with the ability to sit five minutes every hour, in an eight-hour workday. The claimant can never climb ladders or scaffolds, occasionally stoop, kneel, crouch, crawl, and constantly climb stairs and balance. The claimant can frequently reach overhead, and in all directions, handle and finger and occasionally push and pull.

AR 38.

In making his RFC assessment, the ALJ assigned "little weight" to the opinion of Dr. Peter Rumore, a treating rheumatologist, that Schiulaz could, *inter alia*, sit no more than two hours in an eight-hour workday. AR 40. He assigned "some weight" to the opinion of consulting physician Dr. Syeda Asad that Schiulaz had "no limitations," but noted that the medical records showed "some physical limitations." AR 40. Finally, the ALJ found Schiulaz's subjective complaints of pain "inconsistent" with the record. AR 38.

On April 12, 2019, the Appeals Council denied review. Schiulaz timely sought judicial review.

## II

Schiulaz argues that the ALJ improperly weighed (A) the medical opinion evidence and (B) her subjective complaints. The Court agrees on both counts.

**A.     Opinion Evidence**

As noted, the ALJ gave "little weight" to Dr. Rumore's opinion and only "some weight" to Dr. Asad's. But the ALJ's RFC assessment was not consistent with either opinion; he rejected both Dr. Rumore's that Schiulaz could sit for no more than two hours and Dr. Asad's that she had no limitations.

An ALJ must base his or her RFC assessment on medical opinion evidence. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical

opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." (citation and internal quotation marks omitted)); *Barrie v. Berryhill*, 2017 WL 2560013, at *10 (S.D.N.Y. June 12, 2017) ("[T]he ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability; 'raw data' or even complete medical records are insufficient by themselves to fulfill the ALJ's duty." (citation and internal quotation marks omitted)). That did not happen here. Therefore, remand is required to allow the ALJ to reassess Schiulaz's RFC based on medical opinion evidence.

**B.  Subjective Complaints**

"In determining whether [a claimant is] disabled, [the Commissioner must] consider all [the claimant's] symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). "It is well settled that a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." *Mira v. Astrue*, No. 09-CV-2012, 2011 WL 4056050, at *13 (E.D.N.Y. Sept. 2, 2011) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). If the Commissioner determines that a claimant's subjective symptoms are inconsistent with the objective medical evidence, the Commissioner must explain how the evidence conflicts and how the

4

Commissioner purported to resolve that conflict. *Gough v. Saul*, 799 F. App'x 12, 15 (2d Cir. 2020). However, "once a claimant has been found to have a pain-producing impairment, the Commissioner may not reject the claimant's statements about his pain solely because objective medical evidence does not substantiate those statements." *Henningsen v. Comm'r of Social Sec. Admin.*, 111 F. Supp. 3d 250, 268 (E.D.N.Y. 2015) (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 349–50 (E.D.N.Y. 2010)). Moreover, the Commissioner may not cherry-pick evidence from the record which supports the Commissioner's conclusion while ignoring or discounting unfavorable evidence inconsistent with the Commissioner's conclusion. *See Mills v. Berryhill*, No. 15-CV-5502, 2017 WL 1155782, at *9 (E.D.N.Y. Mar. 27, 2017).

During its disability analysis, the Commissioner must consider "[f]actors relevant to [the Claimant's] symptoms, such as pain," including

(i) [the claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the] pain or other symptoms;
(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the] pain or other symptoms;
(vi) Any measures [the claimant] use[s] or ha[s] used to relieve [the] pain or other symptoms (e.g., lying flat on [one's] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

5

*Id.* § 404.1529(c)(3). As to point (i), "daily activities cannot be considered in isolation": the ability to function on a daily basis "does not, in itself, contradict a claim of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Brown v. Comm'r of Social Sec.*, No. 06-CV-3174, 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)).

In Schiulaz's case, the Commissioner reviewed the evidence to determine that Schiulaz's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," without adequate explanation. AR 39. According to the Commissioner, Schiulaz's statements

> are inconsistent because [she] largely has a history of Lupus with limited treatment with occasional flares that predate the alleged onset date, during which she was able to perform substantial gainful activity. Post alleged onset date examinations include minimal findings and stable symptoms that were non-progressive. Submissions from [Schiulaz] indicate that with the help of a nurse and her husband, [Schiulaz] cares for [her] disabled son, who has Duchene Muscular Dystrophy ([Tr. at 231]). [Schiulaz] prepares basic meals four days a week, has no problem with personal care, feeds her pet cats and does light housekeeping, including some laundry, ri[n]sing dishes[,] and dusting. [Schiulaz] drives and travels alone. She does light shopping for personal items and groceries and socializes with friends and family.

AR 39. The Commissioner failed to adequately explain why these symptoms are inconsistent with the record. The Court addresses each assertion in turn.

First, the Commissioner found that Schiulaz's pre-onset history of Lupus indicated minimal treatment with little impact, and that post-onset symptoms were similar. But the record tells a different story. Prior to Schiulaz's disability onset date, the record indicates that Schiulaz showed improvement following an increase in her Plaquenil dosage and administration of Prednisone, but nonetheless exhibited elevated levels of antinuclear antibodies, "profound fatigue," polyarthralgias/polyarthritis, Raynaud's phenomenon, and skins lesions (malar rash, painless oral ulcers, and photosensitive skin eruptions), which had been ongoing for twelve years. AR 312. Additionally, the same records indicate Schiulaz suffered from some prolonged morning stiffness as well as chronic mid-low lumbar pain. Medical evidence indicated that "[t]he pattern of joint symptomatology has been stable and nonprogressive." AR 312. In other words, notwithstanding the improvement Schiulaz showed following the increase in her Plaquenil dosage and the administration of Prednisone, Schiulaz's conditions were not getting better, even if they were not quite getting worse.

The record also contains treatment records from nearly six months after her disability onset date indicating that Schiulaz's systemic lupus erythematosus became "more active," coupled with generalized arthritis at multiple sites, degeneration of lumbar disc (which, the record indicates, had nonetheless gotten better without treatment), and a vitamin D deficiency. AR 326.

Schiulaz testified at the hearing that she stopped working when she began suffering from poor concentration, "was fatigued all of the time," and fell asleep at her desk and while driving to work. AR 52. The Commissioner did not adequately explain how this testimony conflicts with the record evidence discussed above.

Second, the Commissioner found that Schiulaz, with help from her husband and nurses, cares for her disabled son afflicted with Duchene Muscular Dystrophy. Again, the record tells a different story. Schiulaz wrote in her function report that she "care[s]" for her son when the nurses—who are present for 21 hours a day, 7 days a week—are not present. AR 231, 234. In the same function report, Schiulaz described the "care" she provides for her son, writing that she "[h]elp[s] nurses with [her] son when asked," and "[i]f no nurse [is] on duty," then she will "sleep in [the] room with" him and "monitor him." AR 230. Schiulaz also wrote that prior to the onset of her disability, she was able to "care for my son at night alone," while currently her husband and the nurses provide her son's care. AR 231. The Commissioner did not adequately explain how Schiulaz's limited role caring for her disabled son conflicts with the record.

Finally, the Commissioner mentioned that Schiulaz was able to manage many of the activities of daily living. However, that Schiulaz can, for example, bathe herself, feed her cats, perform some housekeeping, shop for groceries, and socialize does not necessarily mean that Schiulaz possesses the ability to adequately perform

8

the duties of employment. In a work environment, an employer will require work performed to a certain minimum standard and at a schedule dictated by the employer, whereas in Schiulaz's daily life, she alone determines when and how she will go about her personal activities. *See Samaru v. Comm'r of Social Sec.*, No. 18-CV-6321, 2020 WL 3051576, at *10 (E.D.N.Y. June 8, 2020). The Commissioner did not adequately explain how Schiulaz's ability to perform her daily living activities conflicts with the record.

The Commissioner argues that the ALJ considered all the relevant evidence and that substantial evidence in the record supports his decision. This argument misapprehends the error. Substantial evidence may or may not support the decision, but the Court cannot determine whether that is so unless the ALJ adequately explains his reasoning. Such an explanation is lacking here.

### III

Schiulaz presented strong evidence of disability in her case, and the Commissioner has not adequately explained why Schiulaz is not disabled. However, it is possible that the Commissioner could properly have found Schiulaz disabled with a properly explained decision. Generally, remand for further proceedings is appropriate unless "there is no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Accordingly, remand is appropriate. *Cf. Zabala v. Astrue*, 595

9

F.3d 402, 410 (2d Cir. 2010) (holding that remand was not required where there was "no reasonable likelihood" of a different result following remand).

## IV

For the foregoing reasons, Schiulaz's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this memorandum and order.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 8, 2021